We'll now move to the next case on the calendar which is Crease v. City of New York. Council let me make sure that you're here. Council for Crease. Okay. Carolyn Press is here. Great. Ms. Press. And for the for the City? Yes, Your Honor. Ms. West for the City. All right. So Ms. Press you reserved two minutes for rebuttal so you'll have eight minutes. We'll give you a warning before the last minute and we'll give you a couple minutes to get started. Okay. Great. Thank you. Sure. May it please the court. I represent Janika and Deborah Crease. At every turn on every claim the district court failed to construe facts in the Creases' favor and improperly drew inferences in the moving party's favor. I will start with the false arrest claim. When Officer Martinez approached Janika and Deborah and said, what is this old lady doing there? He then asked whether either of them had sold alcohol to two teenagers he had arrested in the restaurant. When Janika and Deborah said they had not, his response was, well, somebody did. Both of you have to go. This is not probable cause and any reasonable officer would know that. An officer may not make a warrantless arrest without individualized suspicion that a particular person has committed a crime. That Martinez remained uncertain about who gave NDNDA alcohol secluded summary judgment. Defendant's assertion that Martinez had individualized... Absolute certainty is not required as part of the probable cause calculation, is it? I mean... No, your honor. Okay. But here he sees that there's no dispute about that they were underage, that they had the drinks in their hand and there's no dispute that Janika was behind the bar. And there's no dispute that the bar was open for purchasing. So apart from all of the machinations about being in and out of particular rooms or where the bar is, is the bar being the whole establishment or does it just mean the room where the physical bar is where they're selling drinks? Apart from all of that, why isn't there probable cause as to Janika, who was the bartender, that if there is a person in there drinking underage, that she was responsible for it? And even if there was another bartender there, but there wasn't, and there may have been some confusion on that question, why isn't as to Janika, why wasn't there at least probable cause as to her? I think that Deborah is maybe a different situation. Your honor, because Martinez did not know that Janika was the only bartender when he arrested her and his conduct and testimony demonstrate the opposite. As the Supreme Court reaffirmed... Wait a minute, wait a minute. What, what, what, who was the other bartender and what was the evidence of, of the other bartender there? You know, if you, if, if, if there wasn't probable cause for, for Deborah, which, which, which I'm, I'm, I think is a very close case, then what's the evidence of a, of a second, of a second bartender that he, he, you know, as far as I can understand, there was only Janika behind the bar. That, that is correct, your honor, but Martinez twice testified to seeing people or multiple bartenders behind the bar. That's on pages 200 and 227 of the appendix. And Janika was arrested for violating New York's alcohol beverage control law, which is a knowledge or participation statute. If Martinez' last individualized suspicion that Janika Crease knew of or participated in the teenagers being served alcohol, he could not have arrested her. And he had no evidence that she was the only bartender. According to his own testimony, the bar was crowded when Janika was supposedly identified. Given those circumstances, no reasonable officer would think the only way for someone to get or that Janika's presence behind the bar ensured she knew of or participated in ND's possession of it. Finally, no reasonable officer would think Martinez had individualized suspicion when he looked at Janika and said, well, somebody sold the minor liquor. Both of you have to go. The proposition that individualized when he did that, when he did that, one of them was behind the bar, right? Janika was behind the bar and Deborah, Deborah was on the customer side of the bar. Is that correct? That is correct, Your Honor. Yes. But this court has repeated an allegation of sex association with a suspicious group here that would be bartenders. Without more, it does not supply arguable probable cause. Are you saying that the same probable cause exists or doesn't exist with respect to both of these two defendants, plaintiffs simultaneously, or are you going to try and differentiate between them? Was the case for probable cause or absence of probable cause stronger in Deborah's case than Janika's case, or were they just the same? They are different, Your Honor. We would argue that Martinez's arrest of Deborah Crease was even more unmistakably unlawful. First, she was clearly a bystander under a barra, and secondly, she was easily distinguishable from a bartender due to her location on a stool outside of the bar, as well as her age, clothing, and appearance. No bar patient would ever try to order a drink from Deborah because no reasonable person or officer would assume Deborah was a bartender. Again, in fact, not only did Martinez not think Deborah was a bartender when he said, what is this old lady doing there? He suggested that he did not think that she belonged there at all. This is Judge Lynch. Could I ask another question about Janika here? I think you're maybe going to suggest this is a hypothetical question because your position is that Martinez didn't know at the time he made this arrest that she was the only person behind the bar. But let's assume for the moment that A, she was, which is what we apparently do know now on the full record, and B, that the officer had some reason to think that. Do we have any cases or does the New York Court of Appeals or anybody have any cases saying that it's not probable cause for an officer who finds an underage person in a bar with alcohol to think that the bartender is the one who sold it to him? No, your honor. The New York state law is not well developed on that point, but we do have cases like Buechel v. Byrne, which we cite in our brief, that make clear that knowledge or participation is required and that the New York- Oh, sure. Of course, knowledge or participation is required. The question is whether there's a reasonable basis to think that the person who's in charge of selling alcohol in the establishment at the time is the one who sold the alcohol to this particular person. Now, one question is, do I think that is probable cause or should we hold that that is or is not probable cause? But there's a separate question as to whether it's clearly established law that there is no probable cause in those circumstances. So that's why I'm asking you about prior precedent. Yes, your honor. Well, this court has repeatedly held that- Oh, excuse me. You have one more minute. Association with a group without more, and that would be bartenders, does not supply- It's not an association with a group. It's not like, oh, I see this fellow standing over in the corner. I know he works as a bartender, so he must be the one who sold it. It's the fact of who's selling alcohol in that establishment at that time. It's not like bartenders are suspicious characters inherently, so they must be doing something wrong. It's a question of, is the person who is serving in a particular function, that is the function that's in charge of giving out alcohol, is that a reasonable basis to think that that is the cause? I understand that you may argue, and it makes some sense to me, that those of us who have been underage at one time in New York are aware of young people getting others who are of age to buy alcohol for them. So there's a question in my mind as to whether that is probable cause, but is there any clear law that says it's not? Your honor, two points on that question. We would argue that whether it's reasonable to make that assumption depends on how many people were in the bar and how many people were working in the bar. And here the bar was crowded, and Martinez testified that he believed that multiple people were working in the bar. When you say the bar was crowded, are you talking about the entire establishment? Because they had a front room as well, and that's where I believe the two individuals were found. So there seemed to be confusion in the record about when people referred to the bar, what they were referring to. That's correct, your honor, and we would argue that that's true. Martinez testified on page 220 of the appendix that there were 100 people inside Cafe Omar when he saw ND and DA, and he alleges that he saw them in the bar room itself, the larger room. But as we explained in the brief, ND, Janika, and Deborah all suggest that Martinez encountered ND and DA in that smaller entrance room, which is outside of the bar, and that more than supports a inference that if they were in the separate room, the smaller room, that they were out of sight at the bar and then could not have pointed Janika and Deborah out in a clear way that provided individualized suspicion for arrest. If I could just go back briefly to the point about prior precedent, I think we would analogize this court's holdings in Dufort v. City of New York, where police officers knew that Dufort was part of a group in a bar who had brought metal pipes into the bar, and Jenkins, where police knew that Jenkins was present in a suspect's apartment, and then Jones v. Parmley, where they knew that Parmley was part of a group of protesters who had trespassed, but in each of those cases, that association was not enough to supply arguable probable cause for arrest, and nor does it supply arguable probable cause here without individualized suspicion that Janika specifically served minors alcohol. All right. Well, you've reserved two minutes for rebuttal, so let's now hear from Ms. West. Yes, good morning, Your Honors. May it please the court, I'm Melanie West for the City of New York and Officer Martinez. Your Honors, this is a straightforward case where probable cause supported the plaintiff's arrest. It's undisputed that there were two minors drinking alcohol at Cafe Omar. According to plaintiff's account, one of them was the only bartender serving alcohol at Cafe Omar that night. The other plaintiff was with the bartender at the bar and was pointed out by one of the minors as having served him alcohol. No circumstances or evidence suggested that the plaintiff's version of the events that the police officer, for unknown reasons, arrested them and then fabricated evidence to support the arrest is completely unsupported by the record. While one of the minors, N.D., subsequently denied pointing Janika out at the bar, he did not disavow his sworn statement identifying her or claim that he was coerced into making it. And the other minor, B.A., who pointed out Debra at the bar and then swore to it afterwards, never retracted, contradicted, or qualified any of his statements at all. Accordingly, leaving that aside about the statements later on, we're talking about the moment of arrest. And at that point, B.A. was handcuffed, correct? So is it a reasonable inference that he could point out who was at the bar? Or was it really based upon the fact that the officer went in and said, both of you got to go? Well, Officer Martinez's testimony was that B.A. pointed Debra out. And that's uncontradicted by anything in the record, because B.A. was never disclosed. I thought it was contradicted by the fact that he couldn't point anybody out because he was handcuffed. And he didn't describe her, oh, that's that lady over there. He, as far as we know, as far as I understood the record, it was that he said he pointed out the person. It physically pointed out, pointed to the person and pointed them out that way. Your Honor, I'm not aware that there is any testimony that he was, that B.A. was handcuffed before, according to Officer Martinez, he pointed out. Well, it's not a question of according to Officer Martinez, is it? It's a question as to whether there is evidence in the record from which a reasonable jury could discredit Officer Martinez. Doesn't N.D., who has all kinds of stuff, I mean, he has this rather strange deposition. But the one thing he says is he says we were arrested and immediately handcuffed. And I think he says handcuffed behind the back. Yes. Well, N.D. specifically declined to say that B.A. couldn't have pointed out anyone or that B.A. didn't point out anyone. So N.D. followed up. I mean, it's a sort of he gave a non-responsive answer. He was asked whether he was aware of A.B. doing anything or identifying anyone. And he says you'd have to ask him. Well, of course, you wouldn't have to ask him to find out what N.D. saw or didn't see. And there was no follow up. But even putting all that aside, if there were a trial at which N.D. testified in person with all that said exactly what he said in his deposition, which, granted, has many contradictions. And he's obviously trying to walk a line saying I never ratted anyone, but the police didn't make me rat on anyone. But still, this is not really what I said. It's a very perplexing testimony. But couldn't a jury draw from his testimony the conclusion that he never really did identify anyone? Couldn't a jury find that if they heard him say all the things he said in his deposition? I think a jury could perhaps draw the conclusion that N.D. did not point out. Yes. So that would mean that if they believed that, that would mean they believed that Officer Martinez was making up at least N.D.'s identification. And now you've got A.B.'s identification. And let's assume that A.B. is unavailable to either side, since he apparently is not a United States citizen, does not live here, and as far as we know, is in Turks and Caicos and may still be there at the time of the trial. You think that a jury could not infer that if Officer Martinez was inaccurate about N.D.'s actions that nevertheless he must be telling the truth about A.B.'s actions just because A.B. isn't there to testify? I don't believe so, Your Honor. There's simply nothing in the record to suggest that Officer Martinez made it up. There may have been, and a jury might be able to conclude that there was some miscommunication. But N.D. never denied, I mean, for starters, he said he was handcuffed immediately, but he never made, he never claimed that he was unable to point someone out, right? Handcuffed on the spot doesn't necessarily mean... Wasn't he handcuffed, didn't he say he was handcuffed behind his back? Yes. I think he... If he was handcuffed in front, of course, he could point with two hands at once. I suppose he could point with his nose if he was handcuffed behind his back. But I mean, he expressly say he never pointed out anyone. That's what he says. Yes, he denied that he pointed out anyone. Well, if that testimony is believed, and I realize that there could be a lot of cross-examination of him because he says a lot of inconsistent things, but he never waivers from the fact that he did not point anyone out. Now, if he did not point anyone out at all, and Officer Martinez, who is standing next to him, says he did, you either believe Martinez or you believe N.D., don't you? I mean, how could you think that Martinez was mistaken about something as unequivocal as what Martinez says that N.D. did? Right. So two things, Your Honor. First of all, as to the false arrest claim, we can set aside the point out identification, and there's still probable cause for Cheneika's focus on Debra. And the question is, you're maintaining, as I understand it, that since there is no testimony from A.B. that would contradict what Martinez says about what A.B. did, that no reasonable jury who heard N.D.'s testimony could find that Officer Martinez was mistakenly exaggerating, lying about what he says these two young men said. I think that's right, Your Honor. I mean, if you look at N.D.'s testimony and how incoherent it is, at a minimum, you can't draw extrapolation to things he never even testified about, such as whether or not B.A. pointed anyone out at the bar. What you have is uncontroverted testimony from Officer Martinez that B.A. identified Debra. And of course, that was later memorialized in the sworn statement as far as it goes to the other claims. And there's simply no— Well, that would not be admissible at trial, would it? For the— The affidavit of A.B. would not be admissible at trial for anybody, right? It's hearsay. Well, it's a sworn statement, Your Honor, that I'm not sure that that's the case, that it wouldn't be admissible. I'm sorry, I'm getting some feedback, Your Honor. I apologize. But I'm not aware of any reason that it wouldn't be admissible at trial as to the malicious prosecution or the fair trial pieces. I acknowledge that, you know, for the false arrest claim and the determination of whether there was probable cause, obviously, the affidavit was sworn to after the fact. But it was—it's a sworn affidavit. The question I have here is, are we now trying to decide what the truth is, or are we able to take this motion of summary judgment and decide it according to the summary judgment standards, whereas—where we have to draw the inferences in favor of the non-movement? And if we draw the inferences in favor of the non-movement, then it seems to me that if there's contradictory testimony on identification, and Martinez has one version, and Deborah has another, that—and they can't be reconciled until we have a trial, that at least for purposes of summary judgment, you don't get summary judgment here. But that's—I'm sorry, Your Honor. That's not the case. There's no contradictory testimony, because Deborah didn't see whether or not— You have one more minute. Thank you. There's only the testimony of Officer Martinez that B.A. pointed him out, and then there's nothing to contradict that. Deborah and Janika say that Officer Martinez walked out of their line of sight and then came back and arrested them. But they don't—and nobody pointed them out, because they didn't see the identification. And so, there is nothing in the record contradicting Officer Martinez's testimony that B.A. pointed out Deborah. All there is is a speculative attempt to extrapolate from N.D.'s denial of his own point out identification, but that is as to Janika's arrest, and there was independent facts supporting probable cause. All right. Thank you. We'll now hear a rebuttal. Thank you, Your Honor. So, I have two brief points. The first is on what Martinez testified happened as far as the identification. He did not testify that B.A. identified Deborah, nor that N.D. identified Janika. He merely testified that one teenager pointed to the bar and the other person behind the bar, and the other teenager pointed to the bartender in the bar. But we know that Officer Martinez—we know who Officer Martinez was referring to there, or who he thought was being referred to, right? Because Janika is the person behind the bar. There's no dispute about that, is there? No, but there is a dispute as to Janika, who she was not the other bartender in the bar that he says the other teenager pointed to, nor did he ever remember the details of those identifications or document them in any way. Construing that vague identification and testimony in Martinez's favor is an appropriate summary judgment, especially when N.D., Janika, and Deborah testified to the contrary. May I ask a different question while you're up? Is there any other defendant in this case at this point besides Officer Martinez? Your Honor, we don't know who the other officers were at the briefing. Okay, so with respect to the lack of fair trial claim and to any argument that the affidavits that were taken at the police station were the false evidence that was made up by the police, is there any evidence that police station? Assume the worst. Assume that the officers who were interrogating these young men somehow clearly coerced them to give false testimony. What does Martinez have to do with that? The record is not clear on that, Your Honor. I mean, we kind of infer that Martinez brought them to the station and may have been involved. Isn't there testimony that he didn't bring them to the station, that he stayed at the club to finish his inspection and others brought him to the station? Affidavits signed by Martinez. He doesn't remember. Hold on one second. No one other than the lawyer for the appellant should be speaking. So no one other than this press should be speaking other than the judge. Go ahead. He doesn't remember bringing them to the station, Your Honor. And the affidavits are on. Well, is there any affirmative evidence, though? I mean, it's going to be the plaintiff's burden of proof that Officer Martinez did something that's in connection with this this activity. And I'm asking, is there anything that you can point to where anyone says or any reasonable inference can be drawn that Officer Martinez was involved in the interrogations? The record is not clear on that, Your Honor. Okay. All right. Okay. So we will reserve decision. Thank you very much, both of you. Well argued.